IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 27, 2009

## MICHAEL S. MORANI v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Cumberland County**
**No. 6395     Leon C. Burns, Jr., Judge**

_____

**No. E2008-00565-CCA-R3-PC - Filed March 3, 2009**

_____

The petitioner, Michael S. Morani, appeals the denial of his petition for post-conviction relief.  In this appeal he asserts that he was denied the effective assistance of counsel at trial.  Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

G. Earl Patton, Crossville, Tennessee, for the appellant, Michael S. Morani.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Randall A. York, District Attorney General; and Mark Gore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On February 1, 2002, a Cumberland County Criminal Court jury convicted the petitioner of one count of attempted premeditated first degree murder, *see* T.C.A. §§ 39-12-101; 39-13-202 (2000), and one count of theft of property valued at $10,000 or more, *see id.* § 39-14-105(4). The trial court imposed a five-year sentence for the theft conviction to be served concurrently with a 23-year sentence for the attempted murder conviction.  The trial court also imposed $60,000 in fines.

We glean the facts surrounding the petitioner's conviction from the petitioner's direct appeal of his convictions.

> The [petitioner] first met the victim, Alan Logan, in August of 1999
> when he applied for benefits at the Department of Human Services in
> Roane County, where the victim worked.  As the victim testified at
> the trial court, he allowed the [petitioner] to share his Cumberland

County residence for approximately two months, providing both "emotional and financial support." Two years later, the [petitioner] arrived unexpectedly at the residence of the victim, apparently "on foot" and attempting to rekindle their friendship. Approximately one hour into the conversation, Jennifer Reynolds, the [petitioner]'s girlfriend, arrived in a vehicle. The [petitioner] spoke to her privately and she left. About twenty minutes later, she returned, talked with the [petitioner] and left again. After returning to the residence, the [petitioner] remarked, "I've killed a man . . . because he had something I wanted and he wouldn't give it to me." He then displayed a handgun. As the victim reached for his drink, the [petitioner] ordered him to "freeze." In response, the victim threw a table at the [petitioner] and fled toward the door. The [petitioner] shot the victim once in the arm before his gun jammed, allowing the victim to run to a nearby residence, where the neighbor telephoned 911. The victim hid in the woods as the [petitioner] took the victim's 1999 Buick Regal and drove away.

*State v. Michael Salvator Morani* (*Morani I*), No. E2002-02394-CCA-R3-CD, slip op. at 1-2 (Tenn. Crim. App., Knoxville, Aug. 14, 2003), *perm. app. denied* (Tenn. Dec. 15, 2003).

The petitioner challenged only the length of his sentences and the amount of his fines on appeal, and this court affirmed the judgments of the trial court.[1] *Id.*, slip op. at 1. The petitioner then filed a petition for post-conviction relief requesting a delayed appeal alleging "ineffective assistance of counsel for failing to file a timely motion for new trial." *Michael Salvator Morani v. State* (*Morani II*), No. E2005-01897-CCA-R3-PC, slip op. at 1 (Tenn. Crim. App., Knoxville, June 30, 2006). On July 25, 2005, the post-conviction court entered an agreed order granting a delayed appeal and holding all other post-conviction issues "in abeyance or dismissed without prejudice pending a ruling on appeal," and the petitioner filed a timely notice of appeal. *Id.*, slip op. at 3. This court reviewed the petitioner's claims on delayed appeal, and we affirmed the judgments of the trial court. *Id.*, slip op. at 1.

The petitioner, through counsel, amended his petition for post-conviction relief on May 31, 2007. His amended petition alleged that trial counsel was ineffective in failing "to timely confer with the client and evaluate his defenses on their merits," failing to "fully discuss potential strategies and tactical choices during plea negotiations and prior to trial," failing to "timely and effectively test the State's case through defensive procedures," failing to "conduct appropriate and timely investigation, both factual and legal, to assist [p]etitioner in determining his defensive choices," and making "independent tactical decisions that were not in the [p]etitioner's best interest." The original petition for post-conviction relief further alleged that counsel was ineffective in failing to evaluate the petitioner's mental history in presenting an adequate defense.

---

[1] Because trial counsel failed to file a timely motion for new trial, the petitioner was unable to pursue all issues on direct appeal. *Morani II*, slip op. at 2.

At the February 26, 2008 evidentiary hearing on his petition, the petitioner testified that he met with trial counsel "[t]hree . . . [m]aybe four" times. During these meetings, the petitioner informed counsel of his "intimate relationship" with the victim. The petitioner stated that, at trial, the victim "flatfoot lied" by denying the relationship. The petitioner explained, "[The victim] was saying . . . some kind of NAACP March, or whatever, or Million Man March . . . was the reason why he was helping me out and doing all of the things that he was doing for me at that time, and . . . he don't know why things happened the way they happened . . . all of that was false." He said, "I gave [counsel] a couple of witnesses who . . . pretty much knew [about the relationship] and could have testified in trial to the fact that a lot of things that [the victim] was saying was not true." One witness worked with the victim and the other witness, his godmother, had housed the petitioner. The petitioner testified that he provided the names and telephone numbers of these witnesses to counsel "[m]aybe a couple of months" before trial and that he asked trial counsel to subpoena the witnesses. He maintained that he was unable to speak with counsel about why she did not call the witnesses, and that he was unaware that the witnesses would not testify on his behalf until the day of his trial. He stated that counsel told him that the witnesses "didn't have anything relevant to say that could have benefited [sic] [the petitioner] in any kind of way, in trial or whatever," and counsel said that the witnesses's testimony would harm the petitioner's case more than helping him. The petitioner testified, however, that counsel never explained why the testimony would have damaged his defense. The petitioner stated that counsel never informed him that she discerned his defense theories as unavailing.

On cross-examination, the petitioner acknowledged that none of the aforementioned witnesses were present at the hearing to testify as to what they would have offered at trial. He explained, "I didn't have an idea that the hearing would be today." He further admitted that he did not issue subpoenas for any of the witnesses when he filed his petition for post-conviction relief.

The petitioner testified that he provided trial counsel with "evidence to go . . . investigate as far as my psychiatric history." He claimed he was "bipolar" and had "mood swings with anger bursts," which he believed "could have played a major role . . . into a proper defense." He stated he had been "in a couple of psychiatric facilities as a juvenile, and one for stress about two or three years." He explained that he suffered from a "chemical imbalance or whatever"; however, he did not produce medical records at the hearing. On cross-examination, he admitted that he was not prescribed any medications at the time of trial. He admitted that counsel explained, and he understood, the elements of attempted premeditated first degree murder and theft and that his case would be tried before a jury.

The petitioner testified that the State offered him two separate plea deals during the pretrial stages. The petitioner rejected the first offer of eight years' incarceration, and the State later offered 10 years' incarceration upon a plea of guilty. He said, "[Counsel] explained to me that . . . you get found guilty, this is how much time you can get, and if you take this offer, this is how much time you can get." He admitted that counsel explained that he could receive a longer sentence if the case went to trial; however, the petitioner maintained that he and counsel "didn't have a discussion about . . . the fact that [he] would not have a defense in trial." He explained, "I was innocent . . . . I was not guilty of premeditated first degree murder, and I felt like I had a defense . . . which was the truth, to be able to prove my innocence, so I decided not to take the offer." At one point, he

"snapped" at counsel because she wanted him to accept a plea offer, but "[he] didn't feel like an offer was the way [he] wanted to go."

The petitioner testified that he filed a motion to suppress evidence of an alleged confession made to Investigator Wiley Potter. He maintained that he withdrew the motion upon the advice of counsel. He said, "[Counsel] . . . explained . . . the suppression hearing would [take] place without . . . the jury . . . and that the judge would deny that; and when he denied it . . . she would not be able to bring it up when the investigator took the stand and question him . . . about the statement in front of . . . the jury." He determined that withdrawing the motion was the best option because he thought that, if the judge denied his motion, the jury "would not be able to hear anything about [his] denying . . . the statement." He complained that, at trial, counsel failed to question the investigator on whether the petitioner made the confession, "which was the whole reason why [he] told [counsel] not to suppress the statement in the first place." The petitioner testified that counsel led him to believe that she would attempt to make Investigator Potter "trip himself up" on the witness stand.

Lastly, the petitioner testified that counsel did not sufficiently discuss his option to testify in his own defense and that his decision not to testify was "forced upon [him]." He claimed that, at the time of trial, he did not understand that "[his] testimony was the only way that the jury would hear [his] side of the events." He expected that counsel's questioning of witnesses and opening and closing statements would relay his version of events. On cross-examination, he admitted that he signed a waiver of rights form declaring he did not wish to testify. He said, however, "[Counsel] did not present any evidence when the [S]tate closed to the fact of my innocence, so if I took the stand, I felt like that wouldn't have d[one] anything but hurt me." He further testified that he was unaware that, by signing the waiver, he effectively ended the trial. The petitioner stressed that he did not know that counsel was not presenting defense witnesses until the time of trial, and he maintained that he was innocent.

Counsel testified that she had been a public defender for nine years. She could not recall how many times she met with the petitioner prior to trial, but she stated that she counseled him "[s]everal" times. Counsel stated that she and the petitioner discussed trial strategy at every meeting. She explained, "[The petitioner] never told me that he didn't fire that gun, he never said it here today." Contrary to the petitioner's testimony, counsel stated that she and the petitioner "were focusing on largely . . . whether or not the [S]tate could prove premeditation." Counsel testified that the theft charge was "superfluous" because "it was a much lesser offense" than attempted murder. Counsel testified,

> [The petitioner] wants to talk about whether he was innocent, but
> when you have a client that's not telling you that he didn't fire the
> gun, you don't have a client that's telling you that he's completely
> innocent. You have a client that's trying to tell you that you need to
> find a way to get him a lesser charge or to find a way to not let the
> [S]tate prove its case in some respect.

-4-

Counsel testified that she explained to the petitioner the elements of the charges against him and Tennessee's law on premeditation.

Regarding the witnesses that the petitioner wished to present at trial, counsel testified that she thought the witnesses described to her "were character witnesses." She stated that she "tried to explain to him that those witnesses would be much more appropriate for a sentencing hearing." Counsel gleaned from meeting with the petitioner that these witnesses would testify to the petitioner's difficult childhood and the nature of his relationship with the victim. She said, "[I]t didn't seem to me that they had any knowledge relevant to the facts of the case." Counsel maintained that she informed the petitioner that the witnesses were irrelevant on several occasions. On cross-examination, she acknowledged that she did not contact the witnesses, despite the petitioner providing her telephone numbers. She recalled informing the petitioner, prior to trial, that no witnesses would testify on his behalf at trial. She acknowledged that the petitioner seemed surprised to learn that she had subpoenaed no witnesses, but "[the petitioner] was always surprised when things didn't go his way."

Counsel stated that she "tried to touch" on the alleged homosexual relationship between the petitioner and the victim at trial; however, she stated, "[W]ith that subject, there was also the danger of alienat[ing] the jury, and I tried to explain that concept to him too, that we were sort of walking a fine line there." She "didn't hammer on" the issue because she opined that the testimony would harm his case more than it would help. On cross-examination, she stated that the petitioner, at times, thought his relationship with the victim was important to his defense; however, at other times in trial preparation, he did not think the relationship important. She explained that, in her opinion, "if [the jury] believed that [the petitioner] shot at [the victim], and they were homosexuals, . . . how does that make that better?" Counsel acknowledged that in her case notes she had written that one possible witness "[w]arned the [petitioner] that the victim was gay/predatory." She also had written a note that another witness worked at the Tennessee Department of Human Services and suggested a "[f]ather-son" relationship between the petitioner and the victim. Counsel testified that the petitioner never discussed self-defense as a defense theory.

Counsel testified that she was not aware of any mental health issues until after the trial. She testified that the petitioner never mentioned any mental health problems and that she believed that the petitioner was capable of understanding and appreciating the charges against him. Although she "observed . . . some bad behavior from him," she never observed any behavior that led her to request "a forensic evaluation to determine competence or insanity at the time of the offense" or to ask for a jury instruction on insanity or diminished capacity. When asked whether the witnesses provided by the petitioner could have provided mental health history, counsel responded, "It was also possible that [the petitioner] could have done that, but he didn't." Counsel noted that the petitioner mentioned he was "bipolar," and she explained that, upon learning about this condition, it would have been "exterme[ly] difficult" or "impossible" to get an expert to testify for the petitioner.

Regarding the motion to suppress evidence of the petitioner's statements to Investigator Potter, counsel testified that during oral argument of the motion, the petitioner expressed his desire to withdraw the motion. She explained, "The likelihood of success, honestly, was

probably not good. But it was one of those motions that probably needed to be argued." She testified that the supposed confession was neither recorded nor written and that the petitioner claimed "the investigator [was] putting words into his mouth." Counsel testified that she abided by the petitioner's decision to withdraw the motion because "[she] could still cross-examine Investigator Potter at trial."

Counsel testified that she presented both of the State's plea offers to the petitioner. Upon presenting the petitioner with the eight-year offer, he responded that "he wasn't going to take anything that didn't give him time served. He wanted out of jail, period." She testified that the petitioner told her he believed that as the trial date approached, the more lenient the plea offer would become. She explained to him that his strategy was incorrect and that he would likely receive a harsher sentence. Further, she explained that she believed that the petitioner did not have a legitimate chance of being acquitted and that he should consider the plea offers.

Counsel discussed the implications of the petitioner's testifying in his own defense at trial, and she told him that "he was the only one who could decide that."

At the close of proof, the post-conviction court opined on counsel's decision not to "hammer" on the petitioner's alleged romantic relationship with the victim,

> There's . . . just some allusion here today about there was [a homosexual] relationship. But how does that impact the decision in this case? How does the decision not to present that in a forceful way by counsel at the trial, . . . how was that likely to change the results? I don't think it would have any bearing on it. . . . With the facts as they were presented at trial, it would be awfully hard to suggest [the shooting] didn't happen, that he's lying about it. I guess [the petitioner] is saying . . . , "I don't deny shooting him, but I don't -- it didn't happen like he said it happened." I don't think there's enough proof here to suggest that that would have made any difference.

As for the petitioner's argument that counsel should have further investigated the witnesses provided by the petitioner, the post-conviction court acknowledged that "it would have been better" for counsel "to have talked to those witnesses to find out exactly what they were going to say"; however, the post-conviction court credited counsel's determination that the witnesses were "character witnesses" and her tactical decision not to call them at trial. The post-conviction court further noted that the petitioner did not present these witnesses for the hearing, so the court could not determine any prejudice. It stated, "[W]e don't know. We haven't heard from them. We don't have any affidavit, we don't have any knowledge of what they're going to say and how that would have made any difference."

The post-conviction court noted that "[t]here wasn't anything presented [at any time] that suggest[ed] that [the petitioner] wasn't competent to stand trial." The post-conviction court further found that no evidence suggested insanity or diminished capacity. The court stated, "All in all, it seems . . . that counsel was effective," and the court denied post-conviction relief. On March

6, 2008, the post-conviction court filed a written order summarizing its findings and denying the petition for post-conviction relief.

The petitioner appeals the denial of post-conviction relief, and he posits that counsel failed to adequately investigate the case and inform the petitioner of her theories of the case. He contends that this failure caused him to misunderstand the circumstances and weaknesses of his defense, and, based on that misunderstanding, he rejected that State's plea offers. He states that he "went into his trial believing that he would have witnesses to testify on his behalf, and that he had at least one [m]otion filed that his attorney would argue in an effort to suppress certain evidence against him." He argues that "he [was not] advised prior to trial that his own testimony was the only testimony that could possibly provide proof of the innocence he claims to have continually maintained." The State, obviously, argues that the post-conviction court properly denied the petitioner relief.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). The error must be so serious as to render an unreliable result. *Id.* at 687, 104 S. Ct. at 2064. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. *Id.* at 695, 104 S. Ct. at 2068. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

*Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of

counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The evidence adduced at the hearing supports the post-conviction court's denial of relief to the petitioner. Counsel testified that she discussed with the petitioner the theory of challenging the element of premeditation for the attempted premeditated first degree murder charge. She discussed trial strategy at every meeting. Although she could not specify the number of meetings she held with the petitioner, she stated that she met with him "[s]everal" times. Counsel had been a public defender for nine years, and she used her judgment in determining the strategy and tactics used at trial.

We agree with the post-conviction court that counsel's decision not to call the witnesses put forth by the petitioner was a tactical choice not to be reevaluated in hindsight. The post-conviction court "credited counsel's determination that the witnesses were character witnesses" and noted that the petitioner had not produced these witnesses to prove otherwise. "When a [post-conviction] petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). If he fails to do so, he generally fails to establish ineffective assistance of counsel. *Id.* The post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Id.*; *see also Wade v. State*, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995). The petitioner has failed to show any prejudice, and we will not disturb the post-conviction court's determination.

Further, we do not disturb the post-conviction court's finding that counsel's decision not to "hammer on" the alleged homosexual relationship between the victim and the petitioner was a sound tactical decision. We will not disturb counsel's determination that concentrating on the nature of the men's relationship could possibly alienate the jury. We further note that nothing in the trial or hearing evidence suggests that this evidence would have aided the petitioner's defense and may have, in fact, helped the State's proof of premeditation. We also cannot determine any resulting prejudice because we note that our opinion regarding the petitioner's 2003 direct appeal suggested the nature of the relationship, establishing that the nature of the relationship was presented to some degree at trial. *See Morani I*, slip op. at 2.

The petitioner argues that because of inadequate communication from counsel, he did not have the proper knowledge to evaluate whether to accept plea offers from the State and whether to testify at trial. Counsel testified that, prior to trial, she informed the petitioner that no witnesses would testify at trial and that she and the petitioner discussed a strategy focused on challenging premeditation. Counsel testified that the petitioner was unwilling to accept the plea offers and that

she advised against his strategy that the State would become more lenient as trial approached. The petitioner admitted that counsel explained the severity of the sentence he could receive at trial as compared with the plea offers. Counsel also stated that she believed the petitioner understood her explanations during their meetings and that she observed no mental health defects that would prevent him from comprehending. She communicated to the petitioner that she believed he had little possibility of being acquitted by the jury. The post-conviction court, in denying relief, clearly credited the counsel's testimony over that of the petitioner, and we discern no error in its determination that counsel adequately informed the petitioner.

Although the post-conviction court did not explicitly rule upon whether the withdrawing of the petitioner's motion to suppress provided sufficient grounds for ineffective assistance of counsel, we note that it roundly rejected the petitioner's testimony and credited counsel's testimony. Counsel testified that, during argument on the motion to suppress, the petitioner asked her to withdraw the motion. Further, she opined that the motion was unlikely to succeed and that she challenged the alleged confession through cross-examination of Investigator Potter. The petitioner fails to show by clear and convincing evidence that counsel's decision, as per the petitioner's request, not to pursue the motion to suppress violated his right to effective assistance of counsel.

On appeal, the petitioner abandons his grounds that counsel was ineffective in failing to investigate the petitioner's mental health. We credit the post-conviction court's findings that such arguments are unavailing and fail to establish grounds for post-conviction relief.

Because the petitioner has failed to show by clear and convincing evidence that counsel's performance fell below the range of competence demanded of attorneys in criminal cases or that counsel's deficient performance prejudiced his defense, we affirm the post-conviction court's denial of relief.

_____
JAMES CURWOOD WITT, JR., JUDGE